UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

CARRIE BOYD,

    Plaintiff,

v.

MICHAEL J. ASTRUE, Commissioner of the Social Security Administration,

    Defendant.

Case No. C10-1552-RSM-BAT

**REPORT AND RECOMMENDATION**

Carrie Boyd seeks review of the denial of her Supplemental Security Income application. This case involves the interplay between ALJ Bauer's 2008 decision denying Ms. Boyd's application, the District Court's and the Appeals Council's orders remanding that decision for further proceedings, and ALJ Schellentrager's 2010 decision. Ms. Boyd contends ALJ Schellentrager erred by failing to (1) follow the Appeals Council's remand order; (2) find at step two that sleep apnea, panic disorder, PTSD, obsessive compulsive disorder and degenerative disease of the ankle were severe impairments; (3) account for all of her limitations in assessing her residual functional capacity; (4) properly evaluate her treating physicians' opinions; and (5) properly evaluate her testimony. Dkt. 16. As discussed below, the Court recommends the case be **REVERSED** and **REMANDED** for further administrative proceedings

REPORT AND RECOMMENDATION - 1

## PROCEDURAL HISTORY

Carrie Boyd is currently 38 years old, has a GED, and has worked as a cashier, child care provider, and market researcher.[1] On December 28, 2005, she applied for benefits, alleging disability as of May 1, 2003. Tr. 66. Her application was denied initially and on review.[2] ALJ Bauer conducted a hearing on July 3, 2008 and found Ms. Boyd not disabled. Tr. 529. After the Appeals Council denied Ms. Boyd's request for review, Ms. Boyd sought review in the United States District Court. In the District Court, the parties filed a stipulated motion to remand the matter. Pursuant to the parties' stipulation, the Honorable Richard A. Jones reversed the decision and remanded the case for further administrative proceedings pursuant to section 205(g) of the Social Security Act. Tr. 520. Based on the District Court's remand order, the Appeals Council vacated ALJ Bauer's 2008 decision and remanded the case directing a new ALJ take several specific actions.[3] After conducting a hearing on May 12, 2010, ALJ Schellentrager found Ms. Boyd not disabled. Tr. 493. As Ms. Boyd did not seek review by the Appeals Council, ALJ Schellentrager's 2010 decision is the Commissioner's final decision. Tr. 6.

## THE ALJ'S DECISION

Utilizing the five-step disability evaluation process,[4] ALJ Schellentrager made the following findings:

**Step one:** Ms. Boyd had not worked since November 30, 2005.

**Step two:** Ms. Boyd had the following severe impairments: obesity.

**Step three:** This impairment did not meet or equal the requirements of a listed impairment.[5]

---

[1] Tr. 66, 147, 443.
[2] Tr. 49, 53.
[3] Tr. 520, 522.
[4] 20 C.F.R. § 416.920.
[5] 20 C.F.R. Part 404, Subpart P. Appendix 1.

**Residual Functional Capacity:** Ms. Boyd can perform the full range of sedentary work. She can lift, carry, push, or pull 10 pounds occasionally and less than 10 pounds frequently. She can stand or walk 2 hours in an 8 hour workday. She can sit 6 hours in an 8 hour workday.

**Step four:** Ms. Boyd could perform her past work and is thus not disabled.

Tr. 499-508.

## DISCUSSION

**A.     Scope of the Appeals Council's remand order**

Ms. Boyd contends ALJ Schellentrager erred by failing, as directed by the Appeals Council, to call a vocational expert as a witness. Dkt. 16 at 4. Whether an ALJ complies with an Appeals Council remand order is an internal agency matter which arises before the issuance of the agency's final decision. Section 405(g) does not provide this Court with authority to review intermediate agency decisions that occur during the administrative review process. *See* 42 U.S.C. § 405(g). As the Court stated in *Butler v. Astrue*:

> To the extent [the plaintiff] contends that the ALJ did not comply with the Appeal Council's remand order, federal courts only have jurisdiction to review the final decisions of administrative agencies. When the Appeals Counsel denied review of the ALJ's second decision, it made that decision final and declined to find that the ALJ had not complied with its remand order.

2010 WL 342633 at *3 n.1 (C.D. Cal. Jan. 29, 2010) (quoting *Tyler v. Astrue,* 305 Fed. Appx. 331, 332 (9th Cir. 2008)). This Court notes Ms. Boyd did not seek review of ALJ Schellentrager's decision in the Appeals Council, unlike the plaintiff in *Butler*. But this does not alter the fact that the only decision this Court has jurisdiction to review is the final decision of the Commissioner. Hence, review of whether the ALJ followed the Appeals Council's order remains out of bound for this Court. Moreover, the Appeals Council may review an ALJ's decision even where a claimant has not filed exceptions or sought review. *See* Tr. 494. The fact

REPORT AND RECOMMENDATION - 3

the Appeals Council did not, in Ms. Boyd's case, indicates it declined to find ALJ Schellentrager failed to comply with its remand order.

**B.     Scope of the District Court's remand order and Ms. Boyd's ankle problems**

Ms. Boyd also contends ALJ Schellentrager erred by failing to follow Judge Jones' remand order. Dkt. 16 at 5. This claim requires an examination of ALJ Bauer's 2008 decision, Judge Jones' order of remand, and ALJ Schellentrager's 2010 decision. In 2008, ALJ Bauer made the following findings:

> **Step one:** Ms. Boyd had not worked since November 30, 2005.
>
> **Step two:** Ms. Boyd had the following severe impairments: affective disorder, not otherwise specified; substance abuse disorder; degenerative joint disease of the right ankle; and obesity.
>
> **Step three:** These impairments did not meet or equal the requirements of a listed impairment.[6]
>
> **Residual Functional Capacity:** Ms. Boyd can perform simple routine work with only occasional contact with co-workers and the public at a sedentary to light exertional level.
>
> **Step four:** Ms. Boyd is unable to perform her past work.
>
> **Step five:** There are jobs that Ms. Boyd can perform and she is thus not disabled.

Tr. 20-30.

Ms. Boyd appealed ALJ Bauer's decision to this Court. Pursuant to the parties' stipulation, Judge Jones reversed and remanded the matter for further administrative proceedings including the following actions:

> A new ALJ will be appointed to this case on remand;
>
> The ALJ will conduct a new hearing, further develop the record and issue a new decision;

---

[6] 20 C.F.R. Part 404, Subpart P. Appendix 1.

> The ALJ will reevaluate and further develop the medical evidence or record;
>
> The ALJ will reevaluate and further consider Plaintiff's sleep apnea, panic disorder, post traumatic stress disorder, and obsessive compulsive disorder at step two of the sequential evaluation process;
>
> The ALJ will reevaluate step three of the sequential evaluation process, as necessary;
>
> The ALJ will reevaluate Plaintiff's RFC;
>
> The ALJ will reevaluate steps four and five of the sequential evaluation process with the assistance of a vocational expert, as necessary; and
>
> The ALJ will afford Plaintiff the opportunity to present supplemental questions to a vocational expert.

Tr. 522-23. ALJ Schellentrager complied with Judge Jones' remand order with one exception: she exceeded the scope of the order by reevaluating, at step two, ALJ Bauer's finding that Ms. Boyd's degenerative joint disease of the right ankle was a severe impairment. Under the law of the case doctrine, the decision of an appellate court on a legal issue must be followed in all subsequent proceedings in the same case. *See, e.g.*, *United States v. Lewis*, 611 F.3d 1172, 1179 (9th Cir. 2010). The rule of mandate doctrine is a variant of the law of the case doctrine. *Ischay v. Barnhart*, 383 F.Supp.2d 1199, 1214 (C.D. Cal. 2005). Under the rule of mandate doctrine, a lower court receiving a mandate "'cannot vary it or examine it for any other purpose than execution.'" *United States v. Cote*, 51 F.3d 178, 181 (9th Cir. 1996) (citation omitted). "The rule of mandate requires that, on remand, the lower court's actions must be consistent with both the letter and the spirit of the higher court's decision." *Ischay*, 383 F.Supp.2d at 1214 (emphasis in original) (citing *Quern v. Jordan*, 440 U.S. 332, 347 n.18 (1979)).

Numerous district courts in the Ninth Circuit have concluded that both of these doctrines apply with full force to Social Security cases, and that an ALJ may not exceed or contravene the

scope of a district court's remand order. *See Alamrez v. Astrue*, 2010 WL 3894646 (C.D. Cal. Sept. 20, 2010) at *3. The Court sees no reason to deviate from this approach. The decision Ms. Boyd asks this Court to review arises from a hearing and determination rendered pursuant to Judge Jones' remand order. Judge Jones ordered further proceedings to "reevaluate and further consider Plaintiff's sleep apnea, panic disorder, post traumatic stress disorder, and obsessive compulsive disorder at step two of the sequential evaluation process." Tr. 522. He specifically omitted Ms. Boyd's degenerative joint disease of the right ankle from this directive; the ALJ was thus not authorized to reevaluate this impairment at step two. The remand order did not throw open the doors for a reassessment on all impairments at step two. *See, e.g., Gallagher v. Astrue*, 2009 WL 57033 (C.D. Cal. Jan. 6, 2009) (although remand was limited to step four and step five issues regarding plaintiff's past relevant work and alternate work, the ALJ improperly reassessed plaintiff's severe impairments at step two, plaintiff's RFC at step four, and eliminated moderate limitations previously found). Accordingly, ALJ Schellentragger erred in reevaluating whether Ms. Boyd's degenerative joint disease of the ankle was a severe impairment at step two.

This error was not harmless. An ALJ must assess a claimant's residual functional capacity based on all of the relevant evidence in the case record. SSR 96-8p. That did not occur here; ALJ Schellentragger found Ms. Boyd's ankle problems were not severe because she could walk a few blocks and was doing ankle exercises. Tr. 500. As a result, ALJ Schellentragger did not consider or discuss limitations associated with Ms. Boyd's ankle problems in assessing her residual functional capacity. This is problematic in light of ALJ Bauer's earlier 2008 finding that "objective medical evidence established that the claimant's ankle problems and obesity could reasonably be expected to result in some limitation in her ability to perform more strenuous tasks on a sustained basis due to pain and fatigue." Tr. 26.

Accordingly, the Court finds the ALJ erred in omitting Ms. Boyd's ankle problems at step two and erred in failing to account for limitations arising from her ankle problems in assessing Ms. Boyd's residual functional capacity. Consistent with Judge Jones' remand order, Ms. Boyd's degenerative joint disease of the ankle is a severe impairment, as that term is used at step two. On remand, the ALJ should evaluate the limitations arising from this severe impairment in assessing Ms. Boyd's residual functional capacity.

**C.     The ALJ's consideration at step two of sleep apnea**

Ms. Boyd contends, and the Court agrees, the ALJ erred in finding at step two that sleep apnea was not a severe impairment. Dkt. 16 at 7. At step two, Ms. Boyd had the burden to show that (1) she has a medically determinable impairment and (2) the impairment is severe. *See Bowen v. Yuckert*, 482 U.S. 137, 146 (1987); 20 C.F.R. § 404.1520(c), 416.920(c). The step two inquiry is a "a *de minimis* screening device to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996). An impairment is "not severe" if the evidence establishes the impairment is a slight abnormality that has no more than a minimal effect on an individual's ability to work. *Id.*

Here, ALJ Schellentrager found the "record establishes a medically determinable impairment of sleep apnea." Tr. 501. The ALJ, however, found sleep apnea "has not significantly interfered with the claimant's ability to engage in basic work activities for any continuous period of at least 12 months" and is thus not a severe impairment. *Id.* In support of this conclusion, the ALJ found "[Ms. Boyd's] sleep apnea is found to be effectively treated with use of CPAP machine." *Id.* The ALJ also noted Ms. Boyd told her doctors she was feeling more alert during the day and that her friends said she looked "healthier." *Id.* The record does not support the ALJ's conclusions. Ms. Boyd's sleep apnea was diagnosed after she underwent "split

night poysomnography." Tr. 397.  In 2008, Dr. Danus Zoroufy, M.D., a board certified Sleep Medicine specialist, opined that Ms. Boyd's test results showed "very severe obstructive sleep apena." Tr. 399.  In his written report, the doctor noted Ms. Boyd has a "longstanding history of some daytime tiredness" which has worsened over the last several months.  Tr. 401.  Dr. Zoroufy's note of a long standing history indicates Ms. Boyd's sleep apnea was a condition that lasted more than 12 months and would have affected Ms. Boyd for at least 12 months.  This is buttressed by the fact that Dr. Zoroufy prescribed a CPAP machine in 2008 and it was not until 2010 that Dr. Brown noted Ms. Boyd reported feeling more alert.  Tr. 680.  The medical record shows Ms. Boyd has benefitted by using a CPAP machine, as noted by the ALJ.  However, there is no medical evidence showing the CPAP machine is so effective that Ms. Boyd's sleep apnea has no more than a minimal effect on her ability to work.

Accordingly, the ALJ erred in finding sleep apnea was not a severe impairment at step two.  This error was not harmless.  As noted above, an ALJ must assess a claimant's residual functional capacity based on all of the relevant evidence in the case record.  The ALJ failed to consider or discuss limitations associated with sleep apnea in assessing Ms. Boyd's residual functional capacity.  The Court concludes the impact of sleep apnea on Ms. Boyd's capacity to work needs should be addressed by the ALJ on remand.

**D.    The ALJ's step two assessment of Ms. Boyd's mental health problems**

Ms. Boyd contends the ALJ erred in finding her mental health problems were not severe impairments at step two. The Court agrees.  At step two Ms. Boyd had the burden to show her mental health problems were medically determinable impairments and these impairments were more than a slight abnormality.  *See Bowen v. Yuckert*, 482 U.S. at 146.  Here, the ALJ stated Ms. Boyd "was diagnosed with affective disorder and PTSD;" the ALJ also noted that Ms.

Boyd's doctors diagnosed her with suffering from depression with psychotic features, chronic anxiety disorder, obsessive compulsive disorder, and panic disorder. Tr. 501-02. The record thus establishes Ms. Boyd's mental health problems were medically determinable.

The ALJ, however, found Ms. Boyd's mental problems caused no limitations. Relying on the opinion of Dr. Robert McDevitt, M.D., a reviewing physician, the ALJ found all of Ms. Boyd's "mental functional limitations were due to her chronic non-compliance with her treating providers and her apparent abuse of drugs and prescriptions." Tr. 501. There are two problems with the ALJ's step two finding. Dr. McDevitt is a reviewing physician. The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506, n.4 (A nonexamining doctor's opinion "with nothing more" did not constitute substantial evidence.). Similarly in *Gallant v. Heckler*, the Court held that "the report of [a] non-treating, non-examining physician, combined with the ALJ's own observance of [the] claimant's demeanor at the hearing" did not constitute "substantial evidence" and, therefore, did not support the Commissioner's decision to reject the examining physician's opinion that the claimant was disabled. *Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984).

Second, the ALJ conflated steps two and four in finding that none of Ms. Boyd's mental problems were severe impairments. The step-two inquiry is "a *de minimis* screening device." Instead of screening Ms. Boyd's mental problems on this basis, the ALJ engaged in a step four analysis and found Ms. Boyd's mental problems did not cause the mental functional limitations she alleged. Accordingly, the ALJ erred at step two in finding that none of Ms. Boyd's mental health problems are severe impairments.

### E. The ALJ's step four assessment of Ms. Boyd's mental health problems

Although the ALJ found that none of Ms. Boyd's mental health problems were severe impairments, the ALJ nonetheless engaged in a step four analysis of the impact of Ms. Boyd's mental health problems on her ability to work. The record indicates Ms. Boyd's treating and evaluative doctors opined she had significant mental health problems. The ALJ rejected these opinions indicating that they "contain little or no objective findings." Tr. 502.

This is not a proper ground to reject the opinions of the treating and examining doctors. Once a claimant produces objective medical evidence of an underlying impairment, an ALJ may not reject a claimant's subjective complaints based solely on a lack of objective medical evidence to fully corroborate the severity alleged. *See Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991) (en banc). An ALJ may not reject the opinion of a treating physician by merely stating, without more, that there is a lack of objective medical findings in the record to support that opinion. *See Embrey v. Bowen*, 849 F.2d 418, 421 (9th Cir. 1988). Here, as noted above Ms. Boyd was diagnosed with a variety of mental health problems; the ALJ thus erred in rejecting these diagnoses on the grounds they lacked objective medical findings.

The ALJ also rejected the opinions of Ms. Boyd's treating and examining doctors on the grounds that they "not very useful" because Ms. Boyd was "making frequent relapses to cocaine." Tr. 507. Discounting the accuracy or reliability of a physician's opinion due to a claimant's drug use is appropriate in some circumstances, but not under the unique circumstances presented here. In this case, the ALJ found Ms. Boyd's "polysubstance abuse disorder is **not** a contributing factor material to the determination of disability." Tr. 508 (emphasis added). Having made that finding, the ALJ could not then turn around and rely on Ms. Boyd's drug use as grounds to reject the opinions of Ms. Boyd's treating and examining

doctors.

The ALJ's reliance on Ms. Boyd's drug use is also particularly problematic in this case because it appears the ALJ failed to properly apply the regulations implemented by the Commissioner in addressing the impact of drug use on the disability determination. Under the Commissioner's regulations, the ALJ must follow a specific analysis. 20 C.F.R. § 416.935(a). If the ALJ finds the claimant disabled, and there is evidence of substance abuse, the ALJ should proceed under the sequential evaluation and § 416.935 to determine if the claimant would still be disabled absent the substance abuse. *Bustamante v. Massanari*, 262 F.3d 949, 955 (9th Cir. 2001). If found disabled with the effects of substance abuse, the claimant has the burden in steps one through four of the second sequential evaluation process to prove drug or alcohol abuse is not a contributing factor material to his disability. *Parra v. Astrue*, 481 F.3d 742, 748 (9th Cir. 2007).

Here, the ALJ found "the claimant has multiple impairments that are disabling when the effects of DAA [drugs and alcohol] are considered." Tr. 508. "Because the evidence cannot establish that the claimant would not be disabled if she stopped using drugs, I find the claimant's drug abuse disorder is not a contributing factor material to the determination of disability." *Id*. These findings, if adopted, would direct an award of benefits—something that ALJ Schellentrager clearly did not intend. Accordingly, the Court concludes the ALJ failed to properly analyze the impact of Ms. Boyd's drug use both in terms of the five step disability process and as grounds to reject the opinions of Ms. Boyd's examining and treating doctors.

This error is not harmless. Putting aside Ms. Boyd's drug use, there is ample medical evidence that her mental health problems affect her ability to work. For example, examining physician Chris Wilson, M.D., opined Ms. Boyd suffered from major depressive disorder that

was recurrent and severe, cocaine abuse and opiod dependence. Tr. 310. He opined Ms. Boyd would likely have difficulty performing simple and repetitive tasks; performing work activities consistently; and maintaining regular attendance in the workplace and dealing with the usual stressors of the workplace. *Id.*

Examining Physician Kathleen Anderson, M.D., opined Ms. Boyd suffered from major affective disorder and drug addiction. Tr. 257. Dr. Anderson opined Ms. Boyd had depressive symptoms that would make relationships difficult in the working environment. Tr. 258. Dr. Phyllis Sanchez, Ph.D., performed a DSHS psychological evaluation and opined Ms. Boyd suffered from depression, panic/PTSD/OCD and drug dependence. Dr. Sanchez opined Ms. Boyd was chronically mentally ill and seriously disturbed. Tr. 369.

Dr. Wendy Woodard, Ph.D., performed two DSHS psychological evaluations and opined Ms. Boyd suffered from major depression that was severe and recurrent and had polysubstance dependence. Tr. 283-90. She noted marked and severe limitations and opined Ms. Boyd was seriously disturbed. Tr. 285.

Accordingly, the evidence shows Ms. Boyd's mental health problems are severe impairments as that term is used at step two of the disability analysis. On remand, the ALJ should reevaluate the medical evidence regarding her mental health problems in assessing Ms. Boyd's residual functional capacity. The ALJ should, as appropriate, reevaluate the impact of Ms. Boyd's drug or alcohol use utilizing the regulations implemented by the Commissioner.

**F.   Ms. Boyd's credibility**

ALJ Schellentrager found Ms. Boyd "lacks creditability." Tr. 506. As the ALJ did not explicitly find Ms. Boyd was malingering, the ALJ may reject her testimony about the severity of the symptoms only by making specific findings stating clear and convincing reasons for doing

so. *Smolen v. Chater*, 80 F.3d 1273, 1283-84 (9th Cir. 1996). The ALJ may consider "ordinary techniques of credibility evaluation" including the claimant's reputation for truthfulness, inconsistencies in her testimony or between her testimony and conduct, her daily activities, work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which claimant complains. *Id.* at 1284.

The ALJ provided several valid reasons to discount Ms. Boyd's testimony including "criminal history, drug history, parole violations due to drugs," failing to comply with treatment, engaging in drug seeking behavior, being irresponsible, and being dishonest. Tr. 506. Substantial evidence supports some of these reasons. The ALJ noted Ms. Boyd regularly used and tested positive for controlled substances such as cocaine during the period of claimed disability. Tr. 505. When Ms. Boyd appeared before ALJ Schellentrager, she admitted using cocaine 6 months before the hearing. Tr. 381-82. The ALJ also noted that Dr. Xandra Rarden, M.D., declined to provide Ms. Boyd with Vicodin for back pain because the doctor felt "there are too many holes in her story for me to feel comfortable renewing [the Vicodin prescription]." Tr. 506. Under these circumstances, the ALJ properly considered Ms. Boyd's drug use and drug-seeking behavior in discounting her credibility. *Edlund v. Massanari*, 253 F.3d 1152, 1157 (9th Cir. 2001).

The record also shows that Ms. Boyd has been arrested for several times for shop lifting or theft and has had a number of probation violations. Tr. 381-82. Ms. Boyd's criminal history appears to flow from acts committed around 2000 or 2001. *Id.* She testified that she had not been convicted of any crimes since 2003 though she was arrested but never convicted of theft around 2007. Because an ALJ may consider "ordinary techniques of credibility evaluation," the Court concludes it was appropriate for the ALJ to consider Ms. Boyd's criminal history in

assessing her credibility. Certainly, in some cases, a claimant's criminal history is so dated or is of a type that does not reflect on credibility that it would not be grounds to discount a claimant's credibility. But in this case, Ms. Boyd has been arrested and convicted of shoplifting and theft which are crimes of dishonesty; under Federal Rule of Evidence 609 these types of crimes constitute evidence that can be used to attack the character for truthfulness of a witness. One could debate the point about the ALJ's reliance on Ms. Boyd's criminal history. However, where a claimant has more than one arrest and conviction for theft, as is the case here, the Court cannot say it was unreasonable for the ALJ to rely on Ms. Boyd's criminal history as a ground to discount her testimony.

The ALJ also discounted Ms. Boyd's testimony on the grounds that she was not complying with her treatment. The Court finds substantial evidence does not support this reason. To be sure, Ms. Boyd does not have the most consistent treatment record; but she is impoverished and at times missed treatment due to stints in the jail. The ALJ noted Dr. Rarden indicated Ms. Boyd "failed to attend prescribed physical therapy sessions." Tr. 506. Dr. Rarden's notes do not indicate this. Instead, the doctor indicated Ms. Boyd "wants to try PT and agrees to cooperate with treatment program, do exercises and stretches." Tr. 686.

Because one of the ALJ's reasons supporting his adverse credibility finding is invalid, the Court must determine whether the ALJ's reliance on it was harmless error. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195-97 (9th Cir. 2004). Under *Batson*, an error is harmless so long as there remains "substantial evidence supporting the ALJ's conclusions on . . . credibility" and the error "does not negate the validity of the ALJ's ultimate [credibility] conclusion." *Id.* at 1197. In other words, an error is harmless where the ALJ's remaining reasoning and ultimate credibility determination are adequately supported by substantial

evidence in the record.  *Carmickle v. Commissioner of Social Sec. Admin.*, 533 F.3d 1155, 1162-63 (9th Cir. 2008).  Here, the ALJ's decision to discount Ms. Boyd's testimony based on her drug seeking behavior and criminal history are supported by substantial evidence in the record; the Court thus concludes the ALJ's error is harmless and will not disturb the ALJ's assessment of Ms. Boyd's credibility.

## CONCLUSION

For the foregoing reasons, the Court recommends that the Commissioner's decision be **REVERSED** and the case be **REMANDED** for further administrative proceedings.  On remand, the ALJ should evaluate the limitations arising from Ms. Boyd's degenerative joint disease of the ankle, sleep apnea, and mental health problems utilizing the five step disability evaluation process.  The ALJ should develop the record as appropriate and utilize a vocational expert as deemed necessary.

Any objections to this Recommendation must be filed and served upon all parties no later than **August 1, 2011.**  If no objections are filed, the matter will be ready for the Court's consideration on that date.  If objections are filed, any response is due within 14 days after being served with the objections.  A party filing an objection must note the matter for the Court's consideration 14 days from the date the objection is filed and served.  The matter will then be ready for the Court's consideration on the date the response is due.  Objections and responses shall not exceed twelve pages.  The failure to timely object may affect your right to appeal.

DATED this 18th day of July, 2011.

BRIAN A. TSUCHIDA
United States Magistrate Judge